**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANA WOLFE, On Behalf of Herself and all other similarly situated | § § § | |
| Plaintiffs, | § § | CASE NO. |
| | § | CLASS ACTION COMPLAINT |
| v. | § § | JURY TRIAL DEMANDED |
| DUTCH GOLD HONEY, INC., a Pennsylvania Corporation, and TRUE SOURCE HONEY, LLC., a foreign corporation, | § § § § | |
| Defendants. | § § | |

## CLASS ACTION COMPLAINT

Plaintiff, Dana Wolfe, ("Wolfe"), by her undersigned counsel, on behalf of herself and all other persons and entities similarly situated, alleges against Defendants Dutch Gold Honey, Inc., ("Dutch Gold") and True Source Honey, LLC ("True Source"), the following facts and claims upon knowledge as to matters relating to herself and upon information and belief as to all other matters and avers as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.      This is a proposed Class Action brought by Plaintiff on behalf of herself and other consumers who purchased a certain honey product from Dutch Gold that is labeled Dutch Gold Buckwheat Honey ("Buckwheat Honey").

2.      Suit is also brought against True Source for permitting Dutch Gold to use the "True Source Certified" label to mislead consumers into believing that the Dutch Gold Buckwheat Honey is as advertised.

3.      Unknown to Plaintiff and the Class, the Buckwheat Honey sold by Dutch Gold does not contain the antioxidants that consumers prize in buckwheat honey. Moreover, because Dutch Gold buys honey that has been harvested prematurely, Dutch Gold (or the sources it purchases honey from) must dry the honey out, so it heats its Buckwheat Honey to high temperatures for a long enough time that the antioxidants normally found in buckwheat honey are destroyed.

4.      The testing protocol that True Source claims its packer members (like Dutch Gold) must comply with would have revealed that the Buckwheat Honey had been harvested prematurely, heated to dry the honey out, and as a result did not contain the advertised antioxidants. The True Source certification is therefore false.

5.      Because Dutch Gold's Buckwheat Honey was harvested prematurely and does not contain the antioxidants normally found in unheated buckwheat honey, the claim on its website that: "Buckwheat Honey has been demonstrated to have higher levels of antioxidants than other honeys and was featured as an effective cough soother in a research project completed by Penn State College of Medicine" is false. Because honey harvested prematurely is not "honey" as that term is understood in the industry, Dutch Gold's label describing its product as honey is also false and misleading.

## THE PARTIES

6.      Plaintiff Dana Wolfe ("Wolfe") is a natural person and citizen of Cresskill, New Jersey. Plaintiff does her own grocery shopping.

7.      Defendant, Dutch Gold, is a Pennsylvania Corporation with its principal place of business located at 2220 Dutch Gold Drive, Lancaster, Pennsylvania.

8.      At all relevant times, Dutch Gold transacted and conducted business in

Pennsylvania, New Jersey and throughout the United States.

9.       True Source is a foreign corporation with its principal offices located at 1 Massachusetts Avenue NW, Suite 800, Washington D.C. It is a trade organization formed by certain members of the honey industry for the stated purpose of giving consumers and other members of the industry assurances that honey bearing the "True Source Certified" label has been sourced from an identified country, has not been adulterated, is pure and that the labeling is accurate.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is minimal diversity (Plaintiff seeks to represent a New Jersey class of consumers, including named Plaintiff Dana Wolfe, a citizen of New Jersey and Defendant is domiciled and incorporated in Pennsylvania), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiff class.

11.      Venue lies in this District pursuant to 28 U.S.C. §1391 because the Defendant resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District. In addition, Dutch Gold does business and/or transacts business in this Judicial District, and therefore, is subject to personal jurisdiction in this Judicial District and resides here for venue purposes.

## SUMMARY OF THE CASE

12.      This case concerns Dutch Gold's mislabeling and misdescribing of one of its premium products: "Dutch Gold Buckwheat Honey." Dutch Gold fails to disclose to purchasers of

its Buckwheat Honey that it has been prematurely harvested before it is really honey, had to be dried out as the water content of prematurely harvested honey is typically watery, and had its antioxidants destroyed by the heat used to dry the honey. In furtherance of its false advertising, it represents that its honey has been certified by True Source and that it is therefore accurately described as Buckwheat Honey that has not been adulterated.

13.    Prematurely harvested honey is not yet honey. And, prematurely harvested honey is typically watery. Since the bees have not finished making the honey, they have not sealed the honey in its comb. Premature honey is therefore exposed to the elements and typically has been watered down by rain and dew. Dutch Gold (or its suppliers) therefore heats the honey to dry it out. But heating damages the honey; most or all of the antioxidants in buckwheat honey are lost when it is heated for a period of time.

14.    Dutch Gold purchases its Buckwheat Honey from a variety of sources in Montana and the Dakotas. These sources ship the honey to Dutch Gold in large drums. In order to dry out the honey, and/or to process and package its Buckwheat Honey, Dutch Gold heats it. On its website, Dutch Gold claims that its Buckwheat Honey:

> Dutch Gold's Buckwheat Honey was traditionally produced in New York State, but most recently, buckwheat has been planted in Montana and the Dakotas. From the tiny white blossoms on the buckwheat plant (the same plant that produces the grain to make buckwheat flour for pancakes) comes one of the most hearty and robust honeys in the U.S. Buckwheat Honey is very dark in color. It is typically compared with black strap molasses, and it possesses a musty, earthy aroma. **Buckwheat Honey has been demonstrated to have higher levels of antioxidants than other honeys and was featured as an effective cough soother in a research project completed by Penn State College of Medicine.** (emphasis added)

15.    This assertion is untrue. The antioxidants in buckwheat honey that has been heated to a high temperature are destroyed by the heat. It is apparent that the Buckwheat Honey has been heated because it has an elevated 5-hydroxymethylfurfural (HMF) value. The scientific community

has long understood that HMF values over 40 are strong evidence that honey has been heated enough to break down the enzymes and antioxidants contained in the honey.

16.     The international standard promulgated by Codex Alimentarius for honey has set the maximum limit of HMF in honey at 40 mg/kg to ensure that the product has not undergone extensive heating. The Codex Alimentarius is recognized by the World Trade Organization as an international reference standard for the resolution of disputes concerning food safety and consumer protection.

17.     The sample of Dutch Gold's Buckwheat Honey recently purchased by Ms. Wolfe from a store near her home in Cresskill had a tested HMF value of 119, almost three times the threshold of 40 for table honey. And, this sample was not an anomaly; another sample tested had an HMF value of 95, more that twice the threshold of 40.

18.     Moreover, because the honey is harvested prematurely, it is not actually honey yet. It also fails to meet the True Source definition of "honey."

19.     True Source defines "honey" as follows:

> "Honey:  Honey is the natural sweet substance produced by honey bees from the nectar of plants or from secretions of living parts of plants or excretions of plant sucking insects on the living parts of plants, which the bees collect, transform by combining with specific substances of their own, deposit, dehydrate, store and leave in the honey comb to ripen and mature." *True Source Standards*, p.9.

20.     The substance that Dutch Gold sells to the public has not been allowed to mature and ripen. It has not been dehydrated by the bees in the comb. It has been harvested prematurely and artificially dried out with heat that destroys the antioxidants that Dutch Gold falsely claims are in its Buckwheat Honey.

21.     Despite the fact that its Buckwheat Honey has been harvested prematurely and subjected to extreme heat, Dutch Gold advertises on the internet that its Buckwheat Honey: "has

higher levels of antioxidants than other honeys." This is false and misleading. Moreover, Dutch Gold represents on its label that its honey has been True Source Certified, even though that certification is false for the reasons stated above.

22.     Dutch Gold either knew or recklessly failed to know that its claims that its Buckwheat Honey was True Source Certified a pure and unadulterated honey and had higher levels of antioxidants than other honeys was incorrect and misleading, and despite this knowledge, Dutch Gold continues to sell its Buckwheat Honey at prices it could not hope to receive for processed honey. That is, buckwheat honey that has been harvested prematurely and then heated to such an extent that it has lost its antioxidants. For its part, True Source either knew or should have known that its certification of Buckwheat Honey is false.

23.     At all relevant times, Dutch Gold either knew or should have known and was reckless in not knowing that its Buckwheat Honey was harvested prematurely and later heated to the point of losing its antioxidants because it was cooked, thereby destroying the antioxidants that people seek out and expect from buckwheat honey. Dutch Gold knew its Buckwheat Honey was falsely advertised, that it was not honey and that it did not have the health benefits implicitly advertised in its honey. In spite of this, Dutch Gold took no action to: (1) inform purchasers of the defects in its Buckwheat Honey; or (2) recall its misadvertised Buckwheat Honey. Dutch Gold concealed this knowledge from the Class.

24.     At all relevant times, Dutch Gold knew, or should have known, the Buckwheat Honey was (a) defective; (b) would not have the perceived benefits of unheated Buckwheat Honey; and (c) the defect, if known, would have failed to meet the reasonable expectations of consumers, and would not have been, or would not be, sold at the premium price Dutch Gold charges for its Buckwheat Honey.

25.     Dutch Gold knew, or reasonably should have known, prior to sale to Plaintiff and the Class, that the Buckwheat Honey it offered for sale was not truly honey and did not contain all of the antioxidants found in unheated buckwheat honey.

26.     True Source knew or should have known that its certification of Dutch Gold Buckwheat Honey was false.

27.     Dutch Gold's conduct and True Source's conduct, whether committed intentionally or by negligence, thereby deprived consumers such as Plaintiff and the proposed Class of the opportunity to negotiate or pay a lower price to reflect the diminished value of the Buckwheat Honey, or simply avoid buying Dutch Gold's Buckwheat Honey altogether.

28.     Consumers, like Plaintiff and the proposed Class, have reasonable expectations that:

    a.      a honey processor's products and marketing such as Dutch Gold's would accurately describe their product on their label so that consumers could make their honey purchases based upon accurate information on the label; and/or,

    b.      a honey company processing, producing or marketing honey, such as Dutch Gold, would only sell honey described as Buckwheat Honey if it had the perceived physical properties that are associated with Buckwheat honey.

## DUTCH GOLD'S CONDUCT WITH RESPECT TO ITS DECISION TO COOK THE HONEY AT ISSUE

29.     Dutch Gold has been aware, or but for its negligence or reckless indifference would have known, that its Buckwheat Honey was harvested prematurely and no longer has antioxidants after it is cooked for processing.

30.     Dutch Gold knew (or but for its negligence or reckless indifference would have known) that it or its distribution channels were receiving, and did receive, prematurely harvested honey that had been heated to such a temperature that it ceased to have those properties for which

Plaintiff and the proposed Class of consumers buy Buckwheat Honey. Dutch Gold also knew, or should have known, that even if diligently examined or inspected, consumers would not: (a) be capable of determining that Dutch Gold's Buckwheat Honey was not fully mature honey and did not have the properties of buckwheat honey; and, (b) be able to determine the cause of the problems with the Buckwheat Honey.

31.     Thus, Dutch Gold knew (or but for its negligence or reckless indifference would have known) that for the foreseeable future: (a) it was selling prematurely harvested honey identified as Buckwheat Honey that lacked the properties of mature, unheated buckwheat honey; (b) Dutch Gold's customers such as Plaintiff and the proposed Class were not aware that they were buying honey that was not mature and not unheated buckwheat honey; and (c) those customers had a reasonable expectation that Dutch Gold would accurately describe its honey product on its label.

32.     Despite such knowledge, or as a result of its negligence or reckless indifference, Dutch Gold did not disclose to the market such as Plaintiff or the proposed Class that it was selling prematurely harvested, cooked honey and that its honey did not have the chemical properties that Dutch Gold and the market attribute to mature buckwheat honey. At all relevant times, Dutch Gold had knowledge that the Buckwheat Honey was defective but took no action to: (1) inform purchasers such as Plaintiff and the proposed Class about the Buckwheat Honey or the defects; or (2) recall the Buckwheat Honey. Instead, Dutch Gold concealed this knowledge from Plaintiff and the proposed Class.

33.     At all relevant times, Dutch Gold knew its Buckwheat Honey was both defective and mismarked, but chose to conceal, suppress, or omit these material facts while distributing, marketing, and selling its Buckwheat Honey to unsuspecting consumers in New Jersey,

Pennsylvania and throughout the United States.

**PLAINTIFF WOLFE'S EXPERIENCE**

34.     Plaintiff Wolfe purchased Dutch Gold's Buckwheat Honey in 2019 at a local grocery store.

35.     Unknown to Plaintiff, the Buckwheat Honey was mislabeled and defective in that it was improperly described as buckwheat honey, even though it had been heated to such a degree that the physical properties recognized and promoted by honey industry proponents of buckwheat honey were cooked away.

36.     Also unknown to Plaintiff, the Buckwheat Honey had been harvested prematurely and wet, so it had to be dried out after it had been harvested.

37.     Relying on the efficacy of Dutch Gold's labeling and advertising information, Plaintiff purchased a bottle of Dutch Gold's Buckwheat Honey. Plaintiff had no way of knowing or even of discovering that the Buckwheat Honey was mismarked, falsely advertised and defective.

38.     Dutch Gold charges a premium for its Buckwheat Honey that is substantially more than other companies charge for their processed honey products.

**TRUE SOURCE'S CONDUCT WITH RESPECT TO ITS CERTIFICATION**

39.     True Source holds itself out as an industry watchdog group created and maintained by certain members of the honey industry to promote voluntary compliance with each of the following levels in the distribution chain: only buying honey from vetted sources, only shipping honey that has been tested for purity and authenticity of the identified sources, absence of adulteration, and so forth.

40.     True Source's stated purpose for existing (as it appears on True Source's website) is as follows:

"We pledge to adhere to the standards of True Source Certification. We pledge to protect our customers and consumers, as well as the global reputation of honey products, by ensuring to our utmost ability that honey:
- Is ethically sourced in a transparent and traceable manner from known beekeepers and brokers;
- Moves through the supply chain in full accordance with U.S. law and without circumvention of trade duties; and
- Carries truthful labeling as to its source, has been tested to ensure quality, and has been handled in a safe and secure manner from hive to table.

We endeavor to do business with companies that share our concern for food safety and security. We pledge to stand against the collection, processing or sale of adulterated honey or honey that has been obtained in circumvention of U.S. law. We espouse a global standard for high-quality honey that does not allow for adulteration with added syrups or other sweetener extenders or use of inappropriate additives in honey production."

41.     For honey packers such as Dutch Gold, these requirements for initial and continued membership and the right to label its honey as True Source Certified, include the following:

"If you're a Honey Company/Packer:
- Become True Source Certified! Find out more here. True Source Honey, LLC, has developed the True Source Certified voluntary system of origin traceability for companies that wish to demonstrate through an independent third-party audit firm that their sourcing practices of honey are in full compliance with U.S. and international trade laws.
- Follow the tips listed in this quick reference guide to guard against buying Chinese transshipped honey.
- Ask the importer for a copy of customs form 3461 to determine the country of origin declared to U.S. customs and to confirm that the H.S. code is 0409.00.00.
- To report suspicious offers/honey shipments, go to the allegations page of U.S. Customs and Border Protection. The report can be anonymous."

42.     In particular, honey packers must constantly submit their honey for testing by a third party lab as follows:

"3.1.3.8 Maintain a system to ensure honey purity (freedom from economic adulteration) to protect consumers from fraud. a. Packers will maintain a system to analyze honey purity and demonstrate the system implementation. b. AOAC 998.12 C4 Plant Sugars in Honey or equivalent methodology validated against 998.12 using duplicate samples. c. If evidence of sufficient purity testing is not available, samples obtained for origin analysis may also be subject to analysis for purity." (True Source website)

43.     Dutch Gold has knowingly or recklessly failed to have proper testing performed to

prevent prematurely harvested cooked honey from being packaged and sold.

44.    True Source has knowingly or negligently failed to monitor its member Dutch Gold for compliance with its True Source requirement that it maintain a system that will prevent honey from being sold by Dutch Gold that is not adulterated.

## COMMMON FACTUAL ALLEGATIONS

45.    Upon information and belief, Dutch Gold has sold, directly or indirectly (through grocery stores, health food stores, specialty retailers, and other retail outlets), many thousands of bottles of Buckwheat Honey in New Jersey, Pennsylvania, and across the United States.

46.    Dutch Gold represented that each bottle of Buckwheat Honey conformed to the generally understood composition of mature buckwheat honey; that is, that it had been harvested at maturity, had not been cooked and so had an HMF value of 40 or less. Dutch Gold also represented that its honey was True Source Certified, when in fact it did not meet the requirements for True Source Certification.

47.    These representations became part of the basis of the bargain when Plaintiff and Class Members purchased the Dutch Gold product labeled Buckwheat Honey.

48.    Plaintiff and Class Members relied on Dutch Gold's representations on the Buckwheat Honey bottles' labels and on Dutch Gold's website and accepted such representations as being true.

49.    However, the Buckwheat Honey does not conform to these express representations and, as alleged herein, Dutch Gold breached its express representations concerning its Buckwheat Honey.

50.    The defects and deficiencies in the Buckwheat Honey are due to Dutch Gold's decision to buy immature honey that was wet and then heat the honey to dry it out and to make

processing and bottling easier.

51.     Despite knowing of the defects in its Buckwheat Honey, Dutch Gold has not notified all consumers, purchasers or retailers of the defects nor provided uniform relief.

52.     Plaintiff and the proposed Class Members have not received the value for which they bargained when the Buckwheat Honey was purchased by them. There is a difference in value between the Buckwheat Honey as labeled and advertised and the honey as it actually exists.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the classes defined below:

> All persons and entities in New Jersey who made retail purchases of Dutch Gold's Buckwheat Honey products during the applicable limitations period.

54.     Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Dutch Gold and any entity in which Dutch Gold has a controlling interest or which has a controlling interest in Dutch Gold and its legal representatives, assigns and successors of Dutch Gold; and (c) all persons who properly execute and file a timely request for exclusion from the proposed Class.

55.     *Numerosity*: The Class is composed of more than 100 persons geographically dispersed, the joinder of whom in one action is impractical.

56.     *Commonality*: Questions of law and fact common to the Class exist as to all proposed members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

> a.     Whether the Buckwheat Honey is mislabeled;

b.    Whether the honey was immature when harvested;

c.    Whether Dutch Gold's Buckwheat Honey has not been cooked;

d.    Whether Dutch Gold knew or should have known of the defects;

e.    Whether Dutch Gold's labels and website are misleading;

f.    Whether Dutch Gold concealed from consumers and/or failed to disclose to consumers the defects;

g.    Whether Plaintiff and the proposed Class members are entitled to compensatory damages, including, among other things: (i) compensation for all monies paid by members of the Class for Dutch gold's Buckwheat Honey; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Buckwheat Honey as advertised and the Buckwheat Honey as it really is;

h.    Whether Plaintiff and the proposed Class members are entitled to restitution and/or disgorgement;

i.    Whether Dutch Gold falsely advertised and marketed its Buckwheat Honey products to consumers;

j.    Whether the Buckwheat Honey conforms to the applicable industry standards;

k.    Whether Dutch Gold concealed the defective nature of the Buckwheat Honey;

l.    Whether Dutch Gold's conduct as alleged is misleading deceptive and/or unconscionable; and

m.    Whether True Source negligently or recklessly allowed its certification to go on Dutch Gold's product labels even though it did not meet articulated standards for True Source certification.

57.    *Typicality*: Plaintiff's claims are typical of the claims of the proposed members of the Class, as all such claims arise out of Dutch Gold's conduct in harvesting, heating, packaging and bottling its Buckwheat Honey product as well as its marketing, advertising, warranting and selling the defective honey. Dutch Gold's conduct in concealing the defects in the Buckwheat Honey, True Source's failure to enforce the requirements for its certification program with respect

to Dutch Gold's honey and Plaintiff's and the proposed Class Members' purchases of the defective Honey.

58.     *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving mislabeling, product liability and product design defects.

59.     *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## COUNT I
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

60.     Plaintiff, on behalf of herself and the Class, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

61.     The conduct described above and throughout this Complaint constitutes a deceptive act in connection with a transaction with a New Jersey consumer. New Jersey Statutes Annotated 56; 8-1 et seq.

62.     The New Jersey Consumer Fraud Act prohibits the following:

"The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…" N.J.S.A. 56:8-2.

63.     This applies to the claims of Plaintiff and all Class members because the conduct which constitutes violations of the NJCFA by the Defendant occurred within the State of New Jersey.

64.     Dutch Gold engaged in the concealment, deception, suppression, or omission of material facts in violation of the NJCFA when, in selling and advertising the Dutch Gold Buckwheat Honey, Dutch Gold knew that the Buckwheat Honey was immature and cooked, and thereby had been stripped of all or many of its physical properties recognized by the honey industry and its consumers.

65.     Dutch Gold engaged in false, misleading and deceptive acts when it misrepresented the nature and purity of its Buckwheat Honey as well as its claim that it tested its Buckwheat Honey constantly to ensure that its claims were accurate, with the intent that others, such as Plaintiff and the Class, would rely upon the deception and misrepresentations of material facts and purchase Dutch Gold Buckwheat Honey.

66.     True Source engaged in false, deceptive acts when it allowed Dutch Gold to label its products True Source Certified when it knew or should have known that Dutch Gold's testing protocol did not meet the standards of True Source.

67.     Plaintiff and the Class would not have purchased the Buckwheat Honey or would not have paid the elevated price of Buckwheat Honey, had they known or become informed of the

material defects in the honey.

68.     Dutch Gold's deception and misrepresentation or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the NJCFA.

69.     Dutch Gold has acted unfairly and deceptively by misrepresenting the nature and quality of the Buckwheat Honey.

70.     Dutch Gold either knew, or should have known, that the Buckwheat Honey was defectively processed, packaged and labeled when the honey was heated to temperatures high enough to destroy the antioxidants that buckwheat honey is prized for.

71.     Upon information and belief, Dutch Gold knew that, at the time the Buckwheat Honey left Dutch Gold's control, the honey was defective as described herein. At the time of sale, the honey was defective as described.

72.     As a direct and proximate cause of the violation of the NJCFA described above, Plaintiff and members of the Class have been injured in that they have purchased Dutch Gold's Buckwheat Honey that has lost all or many of the physical properties of unheated buckwheat honey as a result of being heated as alleged. Had Plaintiff and Class Members known the defective nature of the Buckwheat Honey, they would not have purchased their honey, or would have paid a lower price for their honey.

73.     Dutch Gold commands a price of about 70 cents an ounce for its Buckwheat Honey. Honey that makes no such claims sells for about half that.

74.     Dutch Gold used unfair methods of competition and unfair or deceptive acts or practices in conducting its business. This conduct constitutes fraud within meaning of the NJCFA.

75.     This unlawful conduct is continuing, with no indication that the wrongful conduct of Dutch Gold will cease.

76.     As a direct and proximate result of Dutch Gold's unfair and deceptive acts and practices, Plaintiff and the other members of the Class have suffered damages, which include, without limitation, paying about double what they would have paid for other brands of honey.

77.     As a result of the acts of consumer fraud described above, Plaintiff and the Class have suffered ascertainable losses in the form of actual damages that include the inflated purchase price of the Buckwheat Honey for which Dutch Gold is liable to the Plaintiff and the Class, for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

## COUNT II
## FRAUDULENT MISREPRESENTATION

78.     Plaintiff on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

79.     Dutch Gold falsely and fraudulently represented to Plaintiff, the Class, and/or the consuming public in general that its Buckwheat Honey was mature, contained antioxidants and had not been heated to such an extent that its physical properties were altered, compromised or destroyed.

80.     Dutch Gold falsely represented to purchasers and consumers, that its Buckwheat Honey had all the attributes of unheated mature buckwheat honey when in fact the honey had been harvested prematurely and then heated, thereby compromising, altering and/or losing its antioxidant properties.

81.     True Source allowed Dutch Gold to falsely represent that the honey was True Source Certified even though the honey did not meet the requirements for certification.

82.     When these representations were made by Dutch Gold, and allowed by True Source, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

83.     These representations were made by Dutch Gold with the intent of defrauding and deceiving the Plaintiff, the Class and/or the consuming public, all of which evidences reckless and/or willful indifference to the safety and welfare of the Plaintiff and the Class members.

84.     At the time the aforesaid, representations were made by Dutch Gold, Plaintiff and the Class were unaware of the falsity of said representations and reasonably believed them to be true.

85.     In reliance upon said representations, Plaintiff and the Class purchased Dutch Gold's Buckwheat Honey, thereby sustaining damages and injuries and/or being at an increased risk of sustaining damages and injuries in the future.

86.     Dutch Gold knew and was aware, or should have reasonably been aware, that its Buckwheat Honey was defective and not fit for its customary and normal use.

87.     True Source knew and was aware, or reasonably should have been aware, that its True Source certification was being used by Dutch Gold to misrepresent the lack of adulteration of its Buckwheat Honey.

88.     Dutch Gold brought its Buckwheat Honey to the consumer market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Class.

## COUNT III
## FRAUDULENT CONCEALMENT AGAINST DUTCH GOLD

89.     Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

90.     Dutch Gold knew or should have known that its Buckwheat Honey was defective

and not fit for its ordinary and intended use, and did not performed in accordance with either the advertisements and marketing materials of Dutch Gold or to the reasonable expectations of ordinary consumers including Plaintiff.

91.     Dutch Gold fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that its Buckwheat Honey was defective.

92.     Dutch Gold had exclusive knowledge of the defective nature of its Buckwheat Honey at the time of sale. The defect is latent and not something that Plaintiff or the Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

93.     Dutch Gold had the capacity to, and did, deceive Plaintiff and the Class into believing that they were purchasing buckwheat honey that was free from defects, including heating.

94.     Dutch Gold undertook active and ongoing steps to conceal the defects. Plaintiff is aware of nothing in Dutch Gold's advertising, publicity or marketing materials that disclosed the truth about its Buckwheat Honey, despite Dutch Gold's awareness of the problem.

95.     The facts concealed and/or not disclosed by Dutch Gold to Plaintiff and the Class members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Buckwheat Honey.

96.     Dutch Gold intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiff and the Class to act thereon.

97.     Plaintiff and the Class justifiably acted and relied upon the concealed and/or misrepresented the facts to their detriment, as evidenced by their purchase of the Buckwheat Honey.

98.     Plaintiff and the Class suffered a loss of money in an amount to be proven at trial

as a result of Dutch Gold's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Buckwheat Honey on the same terms if the facts concerning the defective Buckwheat Honey had been known; (b) they paid a price premium of as much as 100% because they believed the Buckwheat Honey would have the chemical and physical attributes of mature, unheated buckwheat honey and be otherwise free from defects; and (c) the Buckwheat Honey did not perform as promised.

99.     By reason of the foregoing, Plaintiff and the Class suffered, and continue to suffer, financial injury.

**COUNT IV**
**FRAUDULENT CONCEALMENT AGAINST TRUE SOURCE**

100.     Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

101.     True Source knew or should have known that Dutch Gold's Buckwheat Honey was defective and not fit for its ordinary and intended use, and did not performed in accordance with either the advertisements and marketing materials of Dutch Gold or to the reasonable expectations of ordinary consumers including Plaintiffs.

102.     True Source fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that its True Source certification of Dutch Gold's honey as mature buckwheat honey was defective.

103.     True Source had exclusive knowledge of the defective nature of Dutch Gold's certification of its Buckwheat Honey at the time of sale. The defect is latent and not something that Plaintiff or the Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

104.     True Source had the capacity to, and did, deceive Plaintiff and the Class into

believing that they were purchasing buckwheat honey that was free from defects, including heating.

105.    True Source undertook active and ongoing steps to conceal the defects. Plaintiff is aware of nothing in True Source's advertising, publicity or marketing materials that disclosed the truth about Dutch Gold's Buckwheat Honey, despite True Source's awareness of the problem.

106.    The facts concealed and/or not disclosed by True Source to Plaintiff and the Class members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Buckwheat Honey.

107.    True Source intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiff and the Class to act thereon.

108.    Plaintiff and the Class justifiably acted and relied upon the concealed and/or misrepresented the facts to their detriment, as evidenced by their purchase of the True Source Certified Buckwheat Honey.

109.    Plaintiff and the Class suffered a loss of money in an amount to be proven at trial as a result of True Source's fraudulent concealment and nondisclosure of Dutch Gold's Buckwheat Honey because: (a) they would not have purchased the Buckwheat Honey on the same terms if the facts concerning the defective honey had been known; (b) they paid a price premium of as much as 100% because they believed the Buckwheat Honey would conform to the industry standards of buckwheat honey, mature, unheated and otherwise free from defects; and (c) the Buckwheat Honey did not perform as promised.

110.    By reason of the foregoing, Plaintiff and the Class suffered, and continue to suffer, financial injury.

## COUNT IV
## DECLARATORY RELIEF 28 U.S.C. § 2201

111.    Plaintiff, on behalf of herself and all others similarly situated, adopts and

incorporates by reference all foregoing allegations as though fully set forth herein.

112.    A justiciable controversy of fact exists such that the court may provide declaration

relief.

113.    Defendant has acted or refused to act on grounds that apply generally to the Class,

so that final declaratory relief is appropriate respecting the Class as a whole within the meaning of

Fed. R. Civ. P. 23(b)(2).

114.    Plaintiff seeks a declaratory ruling that:

a.    the Buckwheat Honey has a defect caused by Dutch Gold's processing, heating and bottling immature honey, which causes the honey to lose the physical properties people seek in buckwheat honey. The Court finds that these defects are material and require public disclosure of all of the Buckwheat Honey sold by Dutch Gold over the last 3 years;

b.    the True Source Certified certification on Dutch Gold's product labels are defective for the reason that True Source either negligently or fraudulently fails to monitor its members to ensure compliance the its stated testing standards;

c.    Dutch Gold will establish a testing program and protocol, under Court supervision, to be communicated to class members, which will require Dutch Gold to inspect all Buckwheat Honey products in sufficient numbers to ensure that the Buckwheat Honey is in fact unheated and retains its chemical properties for a period of 5 years; and

d.    True Source will establish a testing and monitoring protocol under Court supervision to be communicated to its members which will require that True Source do sufficient testing and auditing to ensure compliance with its own membership requirements.

## COUNT VII
## INJUNCTIVE RELIEF

115.    Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

116.    Plaintiff and the Class possess a clearly ascertained right in need of protection; namely, the accurate labeling of Dutch Gold's Buckwheat Honey.

117.    Plaintiff and the Class are likely to succeed on the merits of their claims.

118.    Plaintiff and the Class will suffer irreparable harm without an injunction. In particular, Plaintiff and the Class will not be able to accurately evaluate, and pay the proper price for, Dutch Gold's Buckwheat honey unless an injunction is issued requiring Dutch Gold to either (a) market, distribute, and sell mature, uncooked honey or (b) refrain from selling immature cooked/processed honey under its Buckwheat label.

119.    Plaintiff and the Class have no adequate remedy at law. Although Plaintiff and the Class are entitled to monetary damages resulting from Dutch Gold's false advertising practices, Plaintiff and the Class cannot readily quantify the damages for the lost health benefits going forward from Dutch Gold's deceptive acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for a judgment against Defendants as follows:

a.    For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiff as a representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;

b.    For compensatory damages sustained by Plaintiff and the Class;

c.    For equitable and/or declaratory relief;

d.    For payment of costs of suit herein incurred;

e.    For both pre-judgment and post-judgment interest on any amounts awarded;

f.    For punitive damages;

g.    For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

h.    For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

**DUGAN, BRINKMANN, MAGINNIS AND PACE**

By: */s/Mark C. Cavanaugh*
      Mark C. Cavanaugh, Esquire
      Pennsylvania Bar No. 44034
      E-mail:  mccavanaugh@dbmplaw.com
      1880 John F. Kennedy Boulevard, Ste. 1400
      Philadelphia, PA 19103
      Phone: (215) 563-3500

**KENT A. HEITZINGER & ASSOCIATES**

By: */s/ Kent A. Heitzinger*
      Kent A. Heitzinger, Esquire
      Illinois Bar No. 3123385
      E-mail: heitzinger.law@gmail.com
      1056 Gage St., # 200
      Winnetka, IL 60093
      Phone: (847) 446-2430

*(Pro Hac Vice To Be Filed)*

**THE LAW OFFICE OF TERRENCE BUEHLER**

By: */s/ Terrence Buehler*
      Terrence Buehler, Esquire
      Illinois Bar No. 6181738
      E-mail: tbuehler@tbuehlerlaw.com
      1 South Wacker Drive, Suite 3140
      Chicago, IL 60606
      Phone: (312) 371-4385

*(Pro Hac Vice To Be Filed)*

## JURY DEMAND

Plaintiff on behalf of herself and on behalf of the Class, hereby demands a trial by jury as to all issues so triable.

Dated: October 1, 2019

Respectfully Submitted,

**DUGAN, BRINKMANN, MAGINNIS AND PACE**

By: */s/Mark C. Cavanaugh*
    Mark C. Cavanaugh, Esquire
    Pennsylvania Bar No. 44034
    E-mail:  mccavanaugh@dbmplaw.com
    1880 John F. Kennedy Boulevard, Ste. 1400
    Philadelphia, PA 19103
    Phone: (215) 563-3500


**KENT A. HEITZINGER & ASSOCIATES**

By: */s/ Kent A. Heitzinger*
    Kent A. Heitzinger, Esquire
    Illinois Bar No. 3123385
    E-mail: heitzinger.law@gmail.com
    1056 Gage St., # 200
    Winnetka, IL 60093
    Phone: (847) 446-2430

*(Pro Hac Vice To Be Filed)*

**THE LAW OFFICE OF TERRENCE BUEHLER**

By: */s/ Terrence Buehler*
    Terrence Buehler, Esquire
    Illinois Bar No. 6181738
    E-mail: tbuehler@tbuehlerlaw.com
    1 South Wacker Drive, Suite 3140
    Chicago, IL 60606
    Phone: (312) 371-4385

*(Pro Hac Vice To Be Filed)*